UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Calvin Coohey,                                          Civil No. 05-1367 (MJD/FLN)

        Petitioner,

        v.                                                **REPORT AND RECOMMENDATION**

Warren J. F. Caraway,

        Respondent.

_____

Calvin Coohey, Pro Se Petitioner.
John R. Marti, Assistant United States Attorney, for Respondent.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [#1]. This Court issued an Order directing the Respondent to Show Cause as to why Petitioner's Writ should not be granted [#3]. Respondent filed a response in opposition to Petitioner's petition [#6]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Petitioner's application be denied and dismissed with prejudice.

**I. BACKGROUND**

Petitioner Calvin Coohey is currently incarcerated at the Federal Prison Camp in Duluth, Minnesota (hereinafter "FPC Duluth"). (See Buege Decl. ¶ 3, Attach. A.) Petitioner is serving a 30-month sentence, imposed by the United States District Court for the Northern District of Iowa, on August 30, 2004, for Revocation of Supervised Release. (See Villarreal Decl., ¶ 5, Judgment in a Criminal Case (Revocation of Supervised Release) (hereinafter "Revocation Judgment") Ex. 1.)

Petitioner was sentenced to a 30 month term of imprisonment, and was also ordered to complete a six month placement in a community corrections center "in the pre-release component with work release privileges, immediately upon [Petitioner's] release from the Bureau of Prisons on [the] revocation sentence." (Villarreal Decl., ¶ 5, Ex. 1.) After the application of good conduct time (GCT) credits, Petitioner's projected release date from imprisonment is October 25, 2006. (Buege Decl. at ¶ 3.)

On May 11, 2005, Petitioner made a motion with the sentencing court to modify his special conditions of supervision by waiving item number 2 and replacing it with a recommendation of six months CCC placement in order to accelerate his transfer date to April 25, 2006. (Villarreal Decl., Ex. 2 at 2.) In his moving papers Petitioner states that, if the sentencing court granted the relief sought "[Petitioner] would still be required to serve his six months supervised release following his successful discharge from the CCC." (Villarreal Decl., Ex. 2 at 2.) United States District Court Judge Linda Reade denied Petitioner's Motion on May 17, 2005. (Villarreal Decl., Ex. 3.) Petitioner has exhausted his administrative remedies with the BOP concerning this issue. (Buege Decl. ¶ 5, Attach. C.)

Petitioner filed the present habeas corpus petition challenging the Bureau of Prisons' (hereinafter "BOP") interpretation of the special condition of supervision, number two, identified in his Revocation Judgment, which requires him to serve six months in a Community Corrections Center upon his release from imprisonment. (Pet. at 2; <u>see also</u> Villarreal Decl., ¶ 5, Ex. 1.) Petitioner was informed by his Case Manager that Community Corrections Center (CCC) placement would not be granted by the BOP in his case prior to his completion of his 30 month sentence, because BOP policy prohibits such placement in a case such as Petitioner's. (Pet. at 1.) Petitioner

argues that the wording of the sentencing court's order, with the insertion of the words "in the pre-release component," demonstrates that it was the court's intention that this six months CCC placement was not in addition to the 30-month term of imprisonment, but rather a stipulation that Petitioner be required to serve six months of his 30-month sentence in a half-way house with work release privileges. (Pet. at 2.) Petitioner argues that he will actually be forced to serve a 36-month sentence if he is placed in a CCC for six months after his 30-month revocation sentence is completed.

Petitioner argues that the BOP's interpretation of special condition number two is in violation of the Eighth Circuit's holding in <u>Elwood v. Jeter</u>, 386 F.3d 842, 847 (8th Cir. 2004). Petitioner argues that <u>Elwood</u> stands for the proposition that CCC placements are places of imprisonment for the purposes of 18 U.S.C. § 3621(b), and that if the BOP were to place Petitioner in a CCC for six months after his 30 month sentence was complete, the BOP would convert the sentence of the court into a 36 month sentence instead of a 30 month sentence with a six month CCC placement as a part of the pre-release component of the term of imprisonment. (Pet. at 2.)

Petitioner also argues that, even if the six month CCC placement is to take place upon conclusion of Petitioner's 30 month sentence, the BOP has violated his Fifth Amendment right to equal protection, because the BOP has disregarded the application of 18 U.S.C. Section 3624(c) in his case. (Pet. at 3.) Petitioner argues that the BOP is contending that because the court ordered Petitioner to serve as a part of his conditions of release six months in a CCC that the BOP is restricted by policy to grant Petitioner any CCC placement prior to the termination of his 30-month sentence. (Pet. at 2.) Petitioner argues that the sentencing court did not direct the BOP to ignore the command of 18 U.S.C. Section 3624(c), and that the BOP's failure to apply this statute in

Petitioner's case violates Petitioner's Fifth Amendment right to Equal Protection. (Pet. at 3.)

Petitioner moves this Court to hold that the BOP's interpretation of Petitioner's sentence is erroneous and requests this Court to issue an order requiring the BOP to formulate a pre-release plan for Petitioner in which CCC placement would be granted before his 30 month imprisonment term expires, and that the BOP be directed to take into account that Petitioner's Special condition number two of his conditions of release directs the BOP to grant Petitioner a six month term of CCC pre-release placement. Petitioner asks, in the alternative, that the Court order that Special Condition Number two should not be used by the BOP to restrict Petitioner's CCC placement that would have otherwise been granted by the BOP had the Special Condition not been initiated by the sentencing court.

Petitioner is essentially making two claims in his habeas petition. The first claim Petitioner is making is that the BOP has incorrectly interpreted the sentencing order, as Petitioner states that the BOP interpretation would require Petitioner to serve a 36-month sentence, as opposed to a 30-month sentence.

In the alternative, Petitioner argues that, "even if the BOP believes that the six months [CCC] placement is to take place **after** the 30-month term that [the BOP is] not precluded from satisfying the requirements of 18 U.S.C. § 3624(c) by placing Petitioner in a CCC prior to and as part of the 30-month term." (Pet. at 2.) Therefore, Petitioner argues in the alternative that if the BOP has properly interpreted his sentence to be 30 months incarcerated and six months on supervised release, the BOP is not precluded from placing Petitioner in a CCC placement prior to his supervised release as required by 18 U.S.C. § 3624(c).

The BOP argues that 28 C.F.R. § 570.20, which went into effect on February 14, 2005, states

that the BOP "has expressly recognized its authority to place an inmate in a CCC at any time during his . . . sentence but has opted to exercise it[s] discretion to categorically disallow CCC placement until the last 10 percent of an inmate's sentence, not to exceed six months." (Resp. Mem. at 6; see 28 C.F.R. § 570.20). The BOP argues that "CCC placement is within the authority of the Warden and the Regional Director as set forth in BOP Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedures*." (Resp. Mem at 6; see Buege Decl. ¶ 4, Attach. B.) The program statement clearly states that, in a case like Petitioner's where an inmate is ordered to reside in a CCC as a special condition of supervision after release from confinement, that inmate should not be referred to a CCC for transitional purposes and the inmate should not have the time in a CCC stacked on to the court ordered period of CCC placement. (Buege Decl. ¶ 4, Attach. B.) The BOP argues that, because of this program statement, Petitioner will not be referred to a CCC while he is serving his sentence unless the sentencing court waives the special condition requiring six months of CCC placement following Petitioner's release. (Resp. Mem. at 7.)

Therefore, while Respondent spends time in its memorandum discussing 18 U.S.C. § 3624(c) and the BOP regulations that culminated in 28 C.F.R. § 570.20, the issue in this case is, where an inmate is under court order to serve six months in a CCC as a condition of release, whether the BOP program statement prohibiting the stacking of CCC placement runs afoul with 18 U.S.C. § 3624(c)'s command that the BOP "shall, to the extent practicable, assure that a prisoner serving a term of imprisonment serve a reasonable part, not to exceed six months, of the last ten percentum of the term . . . under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's reentry into the community." If, and only if, the program statement runs afoul with 18 U.S.C. § 3624(c)'s command will the Court reach the issue of whether the regulations

promulgated by the BOP in 28 C.F.R. § 570.20 are valid.

## II. DISCUSSION

A. **The Court Has Jurisdiction Under 28 U.S.C. § 2241 to Hear Petitioner's Claim That the BOP Misinterpreted His Sentencing Order and Petitioner's Claim that the BOP Is Not Precluded From Satisfying the Requirements of 18 U.S.C. § 3624(c) By Placing Petitioner In a CCC Prior to and As a Part of His 30-Month Term.**

The Government argues that the Court lacks jurisdiction under 28 U.S.C. § 2241 to hear Petitioner's claims in the present case for two reasons. First, the Government claims that this Court does not have jurisdiction to hear this claim because "[a]lthough petitioner couches his claim as one of misinterpretation by the BOP of the sentencing court's special condition, in reality, petitioner is attacking the special condition of his revocation sentence by requesting this Court to 'examine the wording of the sentencing court's order.'" (Resp.'s Mem. at 8) (quoting Pet.'s Mem. at 2.) Secondly, the Government argues that this Court does not have jurisdiction to hear Petitioner's claims under 28 U.S.C. § 2241 because Petitioner is not challenging the length or duration of his confinement, but rather, he is challenging the place of his confinement.

1. **To the Extent Petitioner Asserts a Claim Attacking Special Condition Number Two of His Revocation Sentence, This Court Lacks Jurisdiction to Hear That Claim.**

In his reply memorandum, Petitioner states that he "is not challenging [his] sentence, rather the execution of that sentence and the errors of Respondent in calculating the end of his sentence." (Reply Mem. at 2.) Petitioner argues that "[h]e is not challenging the sentence, rather the execution of that sentence and the errors of the Respondent in calculating the end of his sentence." (Reply. Mem. at 2.) Petitioner argues

> if Respondent's position [is] that the six months in a CCC is in addition to 30 months total term of imprisonment, that automatically converts the sentence imposed . . . to

>
> 36 months. If it intended to impose a 36-month sentence, it would have said so. It is not Petitioner's position that it couldn't have imposed a 36-month term of imprisonment with six months to be served in a CCC, only that it didn't do so.

(Reply Mem. at 2.)

To the extent that Petitioner is attacking the special condition of his revocation sentence this Court does not have jurisdiction under 28 U.S.C. § 2241 to hear that claim. 28 U.S.C. § 2241 permits a petition from a petitioner challenging the execution, length or duration of a sentence. Conversely, 28 U.S.C. § 2255 permits a petition to set aside, vacate, or correct a sentence. The Eighth Circuit has stated:

> [u]nlike a petition for habeas corpus, a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is a further step in the movant's criminal case. As such, a federal prisoner's challenge to the validity of his sentence must be addressed to the committing court unless he can show that such a motion is inadequate or ineffective to test the legality of his detention.

Thompson v. Smith, 719 F.2d 938, 940 (8th Cir.1983.) As the Eight Circuit has stated, "a challenge to the validity of the sentence itself must be brought under § 2255 in the district of the sentencing court." Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002).

In the present case Petitioner previously filed a motion attacking the special condition of supervision with the sentencing court in the Northern District of Iowa. (See Villarreal Decl. Ex. 2.) Petitioner's motion was denied. (See Villarreal Decl. at Ex. 3.) Petitioner has not shown that section 2255 was an inadequate or ineffective remedy; therefore, Petitioner is not permitted to raise this issue in his writ of habeas corpus under 28 U.S.C. § 2241. However, Petitioner also asserts two other claims in his habeas corpus petition, and it is these claims that this Court has the ability to exercise jurisdiction over.

  **2.**  **The Court Has Jurisdiction Under 28 U.S.C. § 2241 To Hear Petitioner's Remaining Claims.**

Respondent argues that this Court does not have jurisdiction to hear Petitioner's remaining claims under 28 U.S.C. § 2241. Respondent argues that Petitioner is not challenging the length or duration of his confinement; rather, Respondent argues that Petitioner is challenging the place of his confinement, and that such a challenge is not properly brought under 28 U.S.C. § 2241. Respondent argues that a habeas action under 28 U.S.C. § 2241 is not "an appropriate venue for petitioner to raise his claims, because his allegations merely concern a 'condition of confinement,'" and that a non-habeas civil complaint or a Bivens action would be the more appropriate venue for Petitioner's claims. (Resp.'s Mem. at 11.) Respondent argues that, in light of these facts, the Court should dismiss the petition for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). (Resp.'s Mem. at 11.)

Several Courts of Appeals have addressed the issue of whether 28 U.S.C. § 2241 confers jurisdiction to hear the petition of a federal prisoner who is challenging not the length or duration, but the execution of his sentence. In Woodall v. Federal Bureau of Prisons, --- F.3d ----, 2005 WL 3436626 at *4 (3d Cir.2005), the Third Circuit was faced with the identical question presented to the Court in this case; that is, whether the district court "lacked habeas jurisdiction to consider [the] petition because [the petitioner] was challenging the 'conditions' of his confinement rather than the fact or duration of his sentence." In Woodall the petitioner was challenging the application of the BOP's new regulations promulgated in 28 C.F.R. § 570.20 as contrary to Congress's directive set out in 18 U.S.C. § 3621(b). Id. The Third Circuit concluded that "Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the *execution of his sentence*." Id. (quoting Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir.2001) (emphasis added)).

The Woodall court noted that the "precise meaning of 'execution of the sentence' is hazy" and therefore, the court attempted to discern the meaning of that phrase by reviewing cases from the Second, Sixth, Ninth and Tenth Circuits. Id. at *5. While the Woodall court noted that the Seventh Circuit would find a § 2241 petition improper in that case, the court stated that "a number of district courts analyzing the 2005 BOP regulations or the previous 2002 policy have discussed this jurisdictional question and found that a § 2241 petition is the proper mechanism for relief." Id. The Third Circuit stated

> [w]e think that the better rule is that of the Second, Sixth, Ninth, and Tenth Circuits, and of the district courts referred to . . . The approach of these courts is consistent with notions of the plain meaning of the term 'execution' which is to 'put into effect' or 'carry out.' . . . Carrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution . . . we determine that placement in a CCC represents more than a simple transfer. Woodall's petition crosses the line beyond a challenge to, for example, a garden variety prison transfer.

Id. at *6.

While the Eighth Circuit has not yet ruled on this issue, the holding of the Woodall court is instructive. In addition, while not specifically addressing the jurisdictional issue, the United States District Court, District of Minnesota, recently granted a petition for habeas corpus based on a petitioner's challenge to the February 2005 rules promulgated by the BOP, which address BOP policy concerning CCC placement. See Hayek v. Caraway, 2005 WL 3334600 (D.Minn.2005); 28 C.F.R. 570.20, 570.21. Therefore, this Court has jurisdiction under 28 U.S.C. § 2241 to hear Petitioner's claim that the BOP is required to satisfy the requirements of 18 U.S.C. § 3624 in his case, because he is challenging the execution of the last six months of his 30 month sentence in an ordinary penal institution rather than executing the last six months of his 30 month sentence in a CCC.

In addition, it appears that Petitioner is also challenging the BOP's interpretation of Petitioner's sentencing order. This Court has jurisdiction to hear Petitioner's claim that the BOP misinterpreted Petitioner's sentencing order pursuant to 28 U.S.C. Section 2241 because Petitioner is challenging the length of his detention.

>   B.  **The BOP Properly Interpreted Petitioner's Sentence to Require 30 Months Imprisonment and Six Months CCC Placement as a Condition of Release.**

Upon reviewing the sentencing order, it is clear that the BOP's interpretation of the sentence is the correct one. The sentencing order states that Petitioner is to be imprisoned for a total term of 30 months. (Villarreal Decl. Ex. 1.) Under the section of the sentencing order entitled "Supervised Release- Special Conditions of Supervision" the order lists three conditions of release. The first provision states that "[a]ll special conditions in the original judgment are re-imposed and remain in full force and effect." (Villarreal Decl. Ex. 1.) The third provision states that Petitioner must submit his

> person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit . . . may be grounds for revocation; you shall warn any other residents that the premises may be subject to searches pursuant to this condition.

(Villarreal Decl. Ex. 1.)

Sandwiched in between condition one and three is condition two, which is the subject of this dispute. It is clear that condition two, like conditions one and three, are conditions that will go into effect *after* Petitioner is released from BOP custody. *As a condition of release*, Petitioner must serve a six month placement in a CCC "immediately upon [his] release from the [BOP] on his revocation sentence," just like, *as a condition of release*, Petitioner must submit to searches of his person,

-10-

residence, or vehicle conducted by a United States Probation Officer at a reasonable time and a reasonable manner based on reasonable suspicion. (Villarreal Decl., Ex. 1.) Therefore, the BOP has correctly interpreted the sentencing order in Petitioner's case. The BOP has properly determined that Petitioner is subject to 30 months incarceration and then, upon his release from that incarceration, he is also ordered to serve a six month placement in a CCC as a condition of his release.

>   C.   **The BOP Is Not Required to Refer Petitioner to a CCC for Transitional Purposes.**
>
>       1.   **18 U.S.C. § 3624 Does Not Require the BOP To Place A Prisoner in CCC Placement For More Than Six Months.**

In the present case, Respondent argues that "Congress has granted exclusive authority to the Attorney General and BOP to designate the place of confinement for federal prisoners" pursuant to 18 U.S.C. § 3621. (Resp.'s Mem. at 11.) Respondent further argues that "[d]ecisions regarding the designation of an inmate for service of a sentence are exclusively within the discretion of prison authorities" and that 18 U.S.C. § 3624(c) "does not bestow any enforceable entitlement to any particular form of custody." (Resp.'s Mem. at 12-13.) The Eighth Circuit has stated that

> the BOP is required to place prisoners in 'conditions that will afford [them] a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community' during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable. This duty shall not extend beyond the last six months of the prisoner's sentence.

Elwood v. Jeter, 386 F.3d 842, 847 (8th Cir.2004). In addition, "[s]ection 3624(c) . . . imposes on the BOP an obligation to assure that inmates receive a pre-release plan for at least the last ten percent of the sentence but not more than six months, unless such a plan is practically impossible." Knish v. Stine, 347 F.Supp.2d 682, 688 (D.Minn.2004).

## 2. BOP Program Statement 7310.04 is Entitled to Respect

Petitioner argues that "even if the BOP believes that the six months half-way house placement is to take place **after** the 30-month term . . . they are not precluded from satisfying the requirements of 18 U.S.C. § 3624(c) by placing Petitioner in a CCC prior to and as a part of the 30-month term." (Pet. at 2.) Petitioner argues that the BOP is denying Petitioner his Fifth Amendment right to equal protection by disregarding the application of 18 U.S.C. § 3624(c) in his case. (Pet. at 3.)

> 18 U.S.C. § 3624(c) states that
>
> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

However, BOP Program Statement 7310.04, entitled "Community Corrections Center (CCC) Utilization and Transfer Procedure" (hereinafter "Program Statement") states that, in a case such as Petitioner's, an inmate who is required to spend a portion of time in a CCC as a condition of release does not require an extended CCC placement. (Buege Decl., Attach. B; see also http://bop.gov//policy/progstat/7310_004.pdf.) Pursuant to this Program Statement, the BOP will not refer Petitioner to a CCC for transitional purposes and will not allow Petitioner to have this CCC time stacked on to the court ordered period of CCC placement. Id.

The BOP Program Statement notes that its statutory authority derives from 18 U.S.C. § 3624(c) and 18 U.S.C. § 3621(b). (See http://bop.gov//policy/progstat/7310_004.pdf at 3-4.) Therefore, the BOP Program Statement is an interpretation of the implementation of those statutes.

The Program Statement states that CCC placement is designed to "assist inmates making the

transition from an institution setting to the community." Id. at 5. The Program Statement notes that "[a] number of factors must be weighed to determine the length of CCC placement for inmates, including their individual needs and existing community resources." Id. at 7. Furthermore, the Program Statement was reissued on December 16, 1998, and it was changed, in part, in order to "[e]liminate[] the possibility of 'stacking' time in a halfway house by combining Bureau referral placement with public law or supervised release placement." Id. The Program Statement notes that "[t]he ultimate goal [of CCC referral] is to maximize each eligible inmate's chances for successful release and a law-abiding life." Id. at 8.

The Supreme Court has noted that a BOP "Program Statemen[t] [is] an internal agency guideline . . . which is akin to an interpretive rule that do[es] not require notice and comment." Reno v. Koray, 515 U.S. 50, 61 (1995) (internal quotations and citations omitted). The Supreme Court has stated that "[i]nterpretations such as those in opinion letters--like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law--do not warrant *Chevron*-style deference." Christensen v. Harris County, 529 U.S. 576, 587 (2000).

In Christensen the Court noted that "interpretations contained in formats such as opinion letters are 'entitled to respect' under [the] decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 . . . (1944), but only to the extent that those interpretations have the 'power to persuade.'" 529 U.S. 587 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)); (citing EEOC v. Arabian American Oil Co., 499 U.S. 244, 256-58 (1991)). In EEOC v. Arabian American Oil Co., 499 U.S. 244, 256-58 (1991) the Supreme Court held that interpretive EEOC guidelines are not entitled to Chevron deference.

BOP Program Statement 7310.04 is an internal agency guideline and has not been adopted

pursuant to a notice and comment period. Therefore, Petitioner's challenge to the BOP's implementation of the Program Statement is not appropriately reviewed under the test set out in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). As stated by the Court in Christensen, interpretations contained in formats such as opinion letters, and in this case a BOP Program Statement, are "entitled to respect" under the holding in Skidmore. 529 U.S. at 587. Therefore, the BOP Program Statement is "entitled to respect" under Skidmore and the level of deference to be afforded the BOP Program Statement in the present case "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). In Glover v. Standard Federal Bank, 283 F.3d 953, 962 (8th Cir.2002) the Eight Circuit described the holding in Skidmore as "giving lesser agency rulings, statements, interpretations and opinions concerning statutory meaning deference only proportional to their power to persuade given the agency's specialized experience, investigations and available information."

Based on the statements in the Program Statement, it is clear that the BOP thoroughly considered the statutory command in 18 U.S.C. § 3624(c) and concluded that permitting an inmate to "stack" his or her time in a CCC by combining a BOP referral placement with a supervised release placement was not required in order for the BOP to conform with that statute. 18 U.S.C. § 3624(c) requires that the BOP assure that an inmate spends a reasonable part, not to exceed six months, of the last ten percent of his sentence "under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for . . . re-entry into the community." The BOP Program Statement reasonably concluded that, where an inmate is sentenced to a CCC as a condition

of supervised release, that inmate is afforded "a reasonable opportunity to adjust to and prepare for . . . re-entry into the community" such that that inmate should not be permitted to receive additional time in a CCC than would otherwise be afforded inmates who were not sentenced to a CCC as a term of supervised release.  18 U.S.C. § 3624(c)

Given the BOP's "specialized experience, investigations and available information" it is clear that the BOP concluded that, given the resources available for CCC placement, and given the clear statement of Congress in Section 3624 that each prisoner serve a reasonable part of the last ten percent of their sentence in conditions that will allow them to adjust and prepare for reentry into the community, that prisoners such as Petitioner should not be referred to a CCC for transitional purposes.  Glover v. Standard Federal Bank, 283 F.3d 953, 962 (8th Cir.2002).

In the present case, the purpose of § 3624 is served by Petitioner's sentence.  Petitioner's sentence provides that Petitioner must serve a six month "placement in a community corrections center in the pre-release component with work release privileges, immediately upon [Petitioner's] release from the Bureau of Prisons on this revocation sentence." (Villarreal Decl. at Ex. 1.)  As noted by the Eighth Circuit, the BOP's duty to place prisoners in conditions that will afford them a reasonable opportunity to adjust and prepare for reentry into the community does not extend beyond the last six months of the prisoner's sentence.  Elwood, 386 F.3d at 847.  In the present case, the policy behind §3624, to allow prisoners sufficient time to get adjusted and prepare for reentry into the community, is satisfied by the Program Statement, and the Program Statement is entitled to respect under Skidmore.  Petitioner is not entitled to be given additional time in a CCC above and beyond the six months that he is sentenced to serve as a condition of his supervised release.

### 3. Petitioner's Fifth Amendment Right to Equal Protection Is Not Implicated In the Application of BOP Program Statement 7310.04.

Petitioner argues that BOP staff have violated his Fifth Amendment right to equal protection by disregarding the application of §3624(c) in his case. (Pet. at 3.) In order to allege an equal protection violation, Petitioner must show that the BOP staff treated Petitioner differently than it did similarly situated inmates. Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir.1994), cert. denied, 513 U.S. 1185 (1995). Therefore, "the first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated." Id. "Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." Id. Furthermore, "[u]nless a law places a burden on a fundamental right or focuses on a suspect class, it is subject to a rational basis standard of scrutiny." Knapp v. Hudson, 183 F.3d 786, 789 (8th Cir.1999). Suspect classifications include those classifications regarding "race, alienage, gender, or national origin." Id. (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985)). Unless a statute involves a suspect classification or a fundamental right, the statute will be upheld if it is rationally related to a legitimate government interest. City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976) (per curiam).

In the present case, Petitioner has not asserted how he has been treated differently than inmates similarly situated to him. BOP Program Statement 7310.04, entitled "Community Corrections Center (CCC) Utilization and Transfer Procedures" instructs the BOP that

> inmates who are required to spend a portion of time in a CCC as a condition of
>
> release (i.e. supervised release or court order) do not require an extended Bureau CCC placement. For example, if the Unit Team determines the inmate needs a six month CCC placement, but the inmate is required to stay in a CCC for 90 days as a condition of release, then the institution shall ordinarily refer the inmate for a 60-90 day CCC placement.

(Villarreal Decl., Attachment B, at 7.) Therefore, the BOP has not treated Petitioner differently than inmates similarly situated to him. Every inmate that is required to spend a portion of their time in a CCC as a condition of release is not referred to a CCC for transitional purposes and is not permitted to have CCC placement stacked onto the court ordered period of CCC placement.

Furthermore, Petitioner does not assert that he is a member of a suspect class or that a fundamental right is being infringed; therefore, Petitioner's equal protection claim is reviewed under rational basis review. Petitioner has failed to demonstrate that he was treated differently than others similarly situated or that the BOP Program Statement places a burden on a fundamental right or focuses on a suspect classification. Therefore, Petitioner does not have a viable equal protection claim.

The BOP's duty to adhere to § 3624 does not extend beyond the last six months of a prisoner's sentence. In the present case, Petitioner will serve the last six months of his sentence in a CCC pursuant to his sentencing order. The Court can find no case that asserts that any prisoner is entitled to more than a six month placement in a CCC. Furthermore, contrary to Petitioner's claims, the BOP has not disregarded the application of 18 U.S.C. § 3624; rather, the BOP has determined that the sentencing order requiring Petitioner to be sentenced to six months CCC placement as a condition of his release satisfies the requirements of 18 U.S.C. § 3624. Therefore, the Court recommends that Petitioner's habeas corpus petition be denied.

### III. RECOMMENDATION

Based on all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [#1] be **DENIED,** and that this action be

**DISMISSED WITH PREJUDICE.**

DATED: January 26, 2006                          s/ *Franklin L. Noel*
                                                 FRANKLIN L. NOEL
                                                 United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 14, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.